Defendant Anthony Brian Blackmon appeals a judgment of the Court of Common Pleas of Stark County, Ohio, convicting and sentencing him for one count of robbery in violation of R.C. 2911.02, after a jury found him guilty. Appellant assigns five errors to the trial court:
 ASSIGNMENTS OF ERROR I. THE TRIAL COURT ERRED WHEN IT EMPANELED AN ANONYMOUS JURY IN THE ABSENCE OF ANY EVIDENCE OR FINDINGS THAT AN ANONYMOUS JURY WAS NECESSARY IN THIS CASE, THEREBY COMMITTING STRUCTURAL ERROR IN VIOLATION OF APPELLANTS DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION, INCLUDING HIS RIGHT TO A FAIR TRIAL AND IMPARTIAL JURY.
 II. THE JURY VERDICT FINDING APPELLANT GUILTY OF DOMESTIC VIOLENCE [sic] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 III. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ERRED IN ALLOWING THE STATE OF OHIO TO IMPEACH ITS OWN WITNESS IN VIOLATION OF OHIO RULE OF EVIDENCE 607 THEREBY DENYING APPELLANT OF A FAIR TRIAL.
 V. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR A MISTRIAL THEREBY DENYING APPELLANT A FAIR TRIAL.
At trial, the State presented evidence of Robert Cash, the victim. Cash testified on December 22, 1999, he went to Stella's Bar, and had a few too many drinks. At Stella's, Cash socialized with appellant, whom he had grown up with and who was nicknamed Tony. Cash also socialized with another man, Anthony Cook.
Cash left the bar and was walking home when he felt someone come up from behind. Cash testified Cook came up next to him and punched him while someone else choked him from behind. Cash felt it was appellant who was choking him because Cook and appellant had been behind him leaving the bar.
Cash passed out from the choke hold, and when he came to, his money and jewelry were missing. Cash went into his apartment and called his cousin and the police. Cash's girlfriend testified she heard Cash tell his cousin "Little Tink" and "Tony" had robbed him. Cash also told investigating officers appellant and a man he knew as "Little Tink" had robbed him.
Appellant and Cook were both arrested for the robbery, and Cook gave a statement to police implicating appellant. Cook was tried first and acquitted. Cook testified at appellant's trial that his nickname is "Tink". Cook testified appellant choked Cash unconscious, and took his money and jewelry from him.
 I
In his first assignment of error, appellant argues the trial court erred in using an anonymous jury, which this court has found to be a structural error, see State v. Hill (February 18, 2000), Stark Appellate No. 1998CA00067, unreported.
The State responds the record does not support appellant's allegation that the trial court used a totally anonymous jury. Admittedly, the jurors were identified by number, but there is nothing in the record to show the court prevented parties or counsel from learning the identities of the jurors. The State also points out trial counsel did not object to the use of numbers to refer to the jurors.
We find appellant's reliance on Hill, supra, to be misplaced. The anonymous juror system used in Hill, did not permit trial counsel to know the names and addresses of the venire, and in fact the jury verdict forms all were sealed and trial counsel could not examine them, Hill at 642. Here, although the jurors were referred to by number, the venire was nevertheless not anonymous, and the verdict form in the record has each juror's signature. We conclude State v. Hill, supra, is distinguishable, and we find no error here.
The first assignment of error is overruled.
 II
Appellant next urges his conviction was against the manifest weight of the evidence. Our procedure upon reviewing a manifest weight of the evidence claim is to review the entire record and determine whether the jury clearly lost its way, so as to create a manifest miscarriage of justice, see State v. Thompkins (1997), 78 Ohio St.3d at 387, citations deleted.
To prove appellant was guilty of robbery, the State had to prove the appellant inflicted or attempted to inflict bodily harm while committing a theft offense, R.C. 2911.02. A theft offense is defined in R.C. 2913.01
as knowingly obtaining and exerting control over another's property without consent.
Appellant urges Cash could not identify appellant directly as the person who choked him, but rather presumed appellant was Cook's companion. Appellant also notes Cash was admittedly intoxicated, and had a prior criminal record. Cash's testimony regarding the robbery differs from Cook's version.
In a jury trial, the jury is the trier of fact who weighs the evidence and determines the credibility of witnesses, see State v. DeHass
(1967), 10 Ohio St.2d 230. We have reviewed the record, and we find there is sufficient competent and credible evidence presented on each element of the crime charged to entitle the jury to conclude the State had proven each of the essential elements of the crime beyond a reasonable doubt.
The second assignment of error is overruled.
 III
Next, appellant alleges he was denied the effective assistance of counsel because his trial counsel did not request the jury be instructed on accomplice.
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court devised a two-prong test requiring an accused to show both his counsel's representation falls below an objective standard of essential duty to the client, and also that the alleged substandard performance actually prejudiced the accused's ability to receive a fair and reliable trial. Ohio uses the Strickland test, see State v. Bradley
(1989), 42 Ohio St.3d 136.
The State maintains the standard accomplice instruction specifically refers to the testimony of those already found guilty or against whom charges are pending. Here, the alleged accomplice, Cook, had already been acquitted in his trial. The standard instruction advises the jury an accomplice may have a special motive for testifying and for this reason, instructs the jurors to review the accomplice's testimony with suspicion.
While Cook had been acquitted in the earlier trial, he testified here that he was threatened with parole violation if he did not cooperate with the State. The jury was able to perceive Cook's possible motives.
The State urges counsel's decision not to seek an accomplice instruction was the result of a strategic choice in how to conduct appellant's trial. Cook's testimony at trial was somewhat different from his initial statements to police about the robbery. Cook did not testify he was appellant's accomplice, and Cook did not testify appellant robbed Cash. Cook had been acquitted at his trial.
We have reviewed the record, and we find appellant has not demonstrated his trial counsel's representation fell below an objective standard of essential duty. Further, appellant has not demonstrated the outcome of the trial would have been different had the court given the accomplice instruction.
The third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant notes the prosecution called Anthony Cook as its witness. Earlier, the prosecutor had asked the court to declare Cook to be the court's witness, because the prosecutor felt the State of Ohio could not vouch for Cook's truthfulness. The court held the motion in abeyance until it had the opportunity to hear Cook's testimony.
When Cook testified, his testimony deviated from the statements he had made to police. The State then inquired of Cook whether he had had the opportunity to review his prior statements to the police before the trial, and Cook testified he had reviewed his statement the day before. At that point, the court permitted the prosecutor to show Cook the statement he made to police, before continuing to examine Cook. Cook continued to testify differently from his earlier statement, stating that he could now remember certain things even though he saw from his statement to the police his earlier version differed.
On cross examination, defense counsel inquired about Cook's parole status and the number of years he had remaining on his original prison sentence. On cross, Cook admitted the investigating officers told him it was appellant who had informed on Cook. Cook testified that was why "he put appellant into it." After Cook was acquitted in his trial, his parole officer had told him either appellant went to jail or Cook would go back to jail.On redirect, the State asked Cook whether appellant robbed Robert Cash, and Cook equivocated, and testified he was not sure what happened. Cook testified in his situation "a person would have said anything they needed to in order to divert suspicion from themselves." At that point, the trial court called a recess and summoned Cook's attorney to the courtroom.
Outside the hearing of the jury, and with Cook's counsel present, the trial court discussed with appellant his Fifth Amendment rights and the law regarding perjury. The trial court then declared Cook the court's witness because, given the State's earlier motion, and the nature of Cook's testimony, the court found Cook was not cooperating with the State of Ohio to the court's satisfaction.
The State points out that even prior to this, defense counsel did not object to what can only be characterized as leading questions from the prosecutor. Evid.R. 614 governs this situation. In order to call someone as its own witness, it is not necessary for the trial court to first find the State would be entitled to lead the witness on direct, see State v.Webb (1994), 70 Ohio St.3d 325. The State need not demonstrate surprise in order to impeach the court's witness, State v. Apanovitch (1987),33 Ohio St.3d 19. This court has found the trial court has discretion to determine whether it is appropriate to call a witness on its own motion pursuant to Evid.R. 14, and the court's decision cannot be reversed unless the appellant shows an abuse of discretion, State v. Forehope (1991),71 Ohio App.3d 435.
 The Supreme Court has frequently defined the term abuse of discretion as implying the court's attitude is unreasonable, arbitrary or unconscionable, State v. Adams (1980), 62 Ohio St.2d 151 at 157.
We have reviewed the record, and we find the trial court did not act unreasonably, arbitrarily, or unconscionably in holding the State's motion until it could determine from the circumstances of Cook's testimony whether it would be appropriate to declare Cook the court's witness. Thereafter, when Cook testified as he did, the court did not abuse its discretion in declaring Cook to be the court's witness and permitting the prosecutor more latitude on redirect. We find no abuse of discretion.
The fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant urges the court erred in not sustaining his motion for a mistrial made when in response to the State's question whether Cook knew appellant, he responded he saw appellant "when I was in prison." The trial court acknowledged it was highly prejudicial information, but reserved its decision on the motion for mistrial until Cook finished his testimony and appellant decided whether or not he would testify on his own behalf. The trial court gave a limiting instruction to the jury.
Appellant urges this testimony would be irrelevant and extremely prejudicial, and the court's curative instruction was not sufficient to cure the harm done.
In State v. Garner (1995), 74 Ohio St.3d 49, the Supreme Court held a motion for mistrial is addressed to the sound discretion of the trial court and a mistrial should only be declared when the ends of justice require it and it is no longer possible for the accused to receive a fair trial. A jury is presumed to follow the court's instructions, including curative instructions, Garner at 59.
We have reviewed the record, and we find this is a single instance in an extensive trial. The court immediately intervened when Cook testified he had seen appellant while he was in jail, and no further references were made to appellant's past history.
We find the trial court did not abuse its discretion in overruling the motion for mistrial.
The fifth assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
 _________________ Gwin, P.J.
Wise, J., and Edwards, J., concur